*Tagged opinion*



**ORDERED in the Southern District of Florida on October 15, 2025.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Case No.: 24-12212-LMI |
| | Chapter 7 |
| JOSE RAMON PELUCARTE, and MONICA FRANCO, | |
| Debtors. _____/ | |

### ORDER DENYING (a) TRUSTEE'S MOTION TO COMPEL ACCESS TO DEBTORS' PROPERTY AT 8064 NW 46TH TERR., MIAMI FLORIDA 33166 AND (b) TRUSTEE'S APPLICATION TO EMPLOY JASON A. WELT AND TRUSTEY REALTY INC. AS REAL ESTATE BROKER FOR THE TRUSTEE

This matter came before the Court on July 29, 2025 at 10:00 a.m. for a hearing on the *Motion to Compel Access to the Debtors' Property at 8064 NW 46th Terr., Miami, Florida 33166* (ECF #45) (the "Motion to Compel") and *Application to Employ Jason A. Welt and Trustee Realty Inc. as Real Estate Broker for the Trustee* (ECF #43) (the "Realtor Application") (collectively, "the Motions") filed by Marcia T. Dunn (the "Trustee"), Chapter 7 trustee for the bankruptcy estate of

the above-referenced Debtors, the omnibus response (ECF #50) in opposition to the Motions filed by the Debtors, Jose Ramon Pelucarte and Monica Franco (the "Debtors"), and omnibus reply (ECF #56) filed by the Trustee in support of the relief sought in her Motions.  The Court, after hearing argument of counsel for the Trustee and the Debtors at the hearing, has carefully consider the Motions, the filing in opposition, and record in this case.

The underlying issue with respect to the relief sought in the Motions is whether the Debtors are entitled to claim the entire value of the property located at 8064 NW 46th Terrace, Miami, Florida 33166 (the "Homestead") as exempt when the Debtors claimed a certain dollar value with respect to the homestead exemption. Through the Motions, the Trustee contends that because the value of the Homestead exceeds the dollar amount of the claimed exemption and balance of the mortgage on the Homestead, she should be authorized to retain a broker to market the Homestead for sale, and the Debtors should be compelled to provide the broker with access to market and sell the Homestead. The Trustee would then pay to the Debtors from the proceeds of sale the dollar amount claimed as exempt.

The Debtors argue that the Trustee was on notice of their intent to fully exempt the Homestead pursuant to Florida's unlimited homestead exemption, and since the deadline to object to exemptions has passed, the Trustee's attempts to sell the equity in the Homestead are barred. The Trustee disagrees for the reasons that will be more fully developed in this opinion. Because the Court finds that the Trustee was on notice that the Debtors intended to exempt

2

their entire Homestead, and failed to object to the exemption prior to expiration of the objection deadline, the Motions are **DENIED** with prejudice.

## I.  BACKGROUND

On March 7, 2024, the Debtors voluntarily filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code (ECF #1) (the "Petition Date"). As part of their bankruptcy filing, the Debtors listed their Homestead as follows:



(ECF #1, Sch. A, No. 1.1). The mortgage on the Homestead was listed as follows:

(*Id.*, Sch. D, No. 2.2).

The Debtors, pursuant to Fed. R. Bankr. P. 4003(a), claimed the Homestead exempt as homestead property under Florida law without checking off the box for "*100% of fair market value, up to any applicable statutory limit*"; rather, the Debtors chose to list a specific dollar amount as exempt. Nonetheless, with respect to the basis for the claimed exemption, the Debtors cited to the Florida constitutional and Florida statutory unlimited homestead exemptions as follows:

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br>Copy the value from Schedule A/B | Amount of the exemption you claim<br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| 8064 NW 46th Ter, Miami, FL 33166<br>Miami-Dade County<br>Line from Schedule A/B: 1.1 | $688,000.00 | ☒ $172,571.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Fla. Const. art. X, § 4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02 |

(*Id.*, Sch. C, No. 2).[1]

The Debtors indicated their intention to retain their Homestead subject to the mortgage in other relevant sections of the bankruptcy schedules as well. For example, in the statement of intention the Debtors indicated that they claimed the Homestead as exempt as follows:

---

[1] The Debtors have not explained why the Debtors indicated the value of the Homestead at this amount rather than just checking off the box for the full market value. Perhaps it is because in section 3 of Schedule C the Debtors were asked to indicate whether the amount sought to be exempted exceeded $189,000 to which question the Debtors responded "no". Had the Debtors responded "yes" the question continues "did you acquire the property covered by the exemption within 1,215 days before you filed this case?" The Debtors would have had to answer that question "yes" because they did in fact purchase their Homestead within 1,215 days prior to the Petition Date.

**Part 1:** List Your Creditors Who Have Secured Claims

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: Select Portfolio Servicing, Inc<br><br>Description of property securing debt: 8064 NW 46th Ter, Miami, FL 33166 Miami-Dade County | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a Reaffirmation Agreement.<br>☒ Retain the property and [explain]: | ☐ No<br>☒ Yes |

(*Id.*, Official Form 108 (Statement of Intention), No. 1).

On April 9, 2024, the Trustee held and concluded the meeting of creditors (the "341 Meeting"). At the 341 Meeting the Trustee requested, and the Debtors agreed to, an extension of time for the Trustee to object to the Debtors' claimed exemptions. That deadline was extended twice by agreement. That second extension expired on **September 6, 2024** (ECF #36) (the "Second Extension Order").

The Debtors provided all the requested documents, including all the closing documents relating to the purchase of the Homestead, which documents show that the Debtors purchased the Homestead within 1,215 days of the Petition Date.

The Trustee did not request additional documents, nor did the Trustee seek to take the Debtors' oral examination. The Trustee never sought to subpoena any third parties, extend the September 6, 2024 deadline, or file any objection to the Debtors' claimed exemptions before the expiration of that deadline.

On September 9, 2024, the Debtors obtained their discharge (ECF #39). There was no further activity in the case until the Trustee filed the Motions on April 4, 2025.

In seeking the relief requested in the Motions, the Trustee takes the position that the Debtors' homestead exemption was automatically statutorily capped pursuant to 11 U.S.C. §522(p)(1) when their petition was filed, and that because the Debtors claimed a dollar amount less than the section 522(p) exemption to which they were entitled, she had no duty to object before the expiration of the deadline for objections to exemptions. Moreover, any post-petition appreciation of the Homestead inured to the benefit of the Debtors' bankruptcy estate pursuant to section 522(p)(1). In response, the Debtors take the position that the Trustee had full notice of the Debtors' intent to exempt the Homestead in full by citing to the unlimited Florida homestead exemption, of the circumstances surrounding the purchase of the Homestead long before the expiration of the exemption objection deadline, and had the opportunity to investigate the value of the Homestead to determine whether in fact, there was a section 522(p)(1) claim that the Trustee could prosecute. Consequently, the Trustee's failure to make any objection prior to the deadline results in the waiver of the objection to the claimed exemption of the Homestead pursuant to 11 U.S.C. §522(l).

II.  **CONCLUSIONS OF LAW AND ANALYSIS**

Section 522 of the Bankruptcy Code permits debtors to claim certain exemptions, thereby retaining some assets free from the claims of creditors in

6

bankruptcy. 11 U.S.C. §522. In each bankruptcy case, a debtor files a list of property that a debtor claims as "exempt" under section 522(b), and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. §522(l). The effect of an exemption is that the debtor's interest in the property is withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.

In her Motions, the Trustee argues because the Debtors chose to exempt a specific dollar amount rather than seek to exempt their entire Homestead, the estate has an interest in such net equity, if one exists, and the Trustee has the authority to market and sell the Debtors' Homestead to recover the net equity in their home for the benefit of the Debtors' bankruptcy estate and creditors.

In opposition to the relief sought in the Motions, the Debtors argue that, notwithstanding that they put a dollar cap on the amount of the Homestead exemption, the Trustee had fair notice of their intent to claim the entire Homestead as exempt by virtue of the Debtors' citation to the constitutional and statutory homestead exemptions in Florida, both of which are unlimited. Consequently, the Debtors argue that because the homestead exemption is unlimited under state law, but subject to a monetary cap under bankruptcy law, and because the Trustee knew before the exemption deadline that the Homestead had been purchased within 1,215 days of the Petition Date, the Trustee's ability to object to the exemption is foreclosed. The Trustee argues that she did not waive the estate's interest in the Homestead by failing to object to Debtors' claimed exemption before expiration of the deadline because the Debtors were

7

not seeking to exempt an amount in excess of that which is allowed under section 522(p)(1).

In support of her position, the Trustee relies on the United States Supreme Court decision in *Schwab v. Reilly*, 560 U.S. 770 (2010). In *Schwab v. Reilly*, the Supreme Court framed the issue as "whether an interested party must object to a claimed exemption where, as here, the Code defines the property the debtor is authorized to exempt as an interest, **the value of which may not exceed a certain dollar amount, in a particular type of asset**, and the debtor's schedule of exempt property accurately describes the asset and declares the 'value of the claim exemption' in that asset to be an amount within the limits that the Code prescribes." *Id.* at 774 (emphasis added). The Supreme Court held, "in cases such as this, an interested party need not object to an exemption claimed in this manner in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt." *Id.* Thus, the Trustee argues, the Debtors' election to limit the value of the Homestead exemption to a certain number forecloses the Debtors' ability to seek the exemption for any value in excess of that claimed amount, and that pursuant to *Schwab*, the Trustee's ability to recover any value in excess of that claimed amount is not foreclosed by the expiration of the exemption objection deadline.

In support of their position, the Debtors rely on the United States Supreme Court decision in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). In *Taylor*, the Supreme Court framed the issue as "whether the trustee may contest the validity of an exemption after the 30-day period if the debtor had no colorable basis for

8

claiming the exemption." *Id.* at 639. The Supreme Court in *Taylor* held that when the amount the debtor lists as the "value claimed exempt" is not plainly within the limits the Code allows, then the trustee's failure to object to the claimed exemption within the 30-day timeframe prevented the trustee from challenging the validity of the exemption. *Id.* at 642.

    A.  The Unlimited Florida Homestead Exemption

Florida is an "opt out" state; that is Florida has elected to opt out of the federal exemptions scheme. *See* Fla. Stat. §222.20 ("[R]esidents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 . . . . Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes.").

The Debtors' Schedule C identified the basis for the claimed exemption in the Homestead as Florida Constitution article X, section 4(a)(1) and Florida Statute sections 222.01 and 222.02. Article X, section 4 of the Florida Constitution provides a generous, unlimited exemption for homestead property, which prevents the forced sale of such property for the benefit of a homeowner's creditors. That exemption is based on acreage and location of the homestead, not dollar value.[2]

---

2 The Florida Constitution provides:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> > (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which

9

The Florida Statutes recognize the same unlimited homestead exemption.[3] Similarly, the Florida statutory homestead exemption is not limited by dollar amount, but rather whether the property is the judgment debtor's homestead. In this particular case, there is no dispute that the Homestead is in fact the Debtors' Homestead, or that, except with respect to the provisions of section 522(p)(1)[4], that there is any basis to question or challenge the Debtors' homestead exemption.

B. <u>The Trustee Waived any Section 522(p)(1) Objection</u>

Resolution of this issue implicates the two Supreme Court cases relied on by each of the parties, *Taylor,* 503 U.S. 638 (1992) and *Schwab*, 560 U.S. 770

---

shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;

(2) personal property to the value of one thousand dollars.

(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child.  The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse.  If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Fla. Const. Art. X, § 4.

3 "[A]ny natural person residing in this state [that] desires to avail himself or herself of the benefit of the provisions of the constitution and laws exempting property as a homestead from forced sale under any process of law, he or she may make a statement, in writing, containing a description of the real property, mobile home, or modular home claimed to be exempt and declaring that the real property, mobile home, or modular home is the homestead of the party in whose behalf such claim is being made." Fla. Stat. §222.01(1).  Same homestead designation can be made after the fact in writing to protect property from a forced sale or levy is made. *See* Fla. Stat. §222.02.

4 Section 522(p) preempts Florida law and applies in Florida, notwithstanding the Florida Statutes, §222.202 or the Florida Constitution. *See* U.S. Const. art. VI, cl. 2 (supremacy clause).

(2010). *Taylor* concerned a debtor, Emily Davis, who was pursuing an employment discrimination claim in state court against Trans World Airlines (TWA). *Taylor*, 503 U.S. at 640. While her discrimination claim was on appeal, Davis filed a Chapter 7 bankruptcy petition. *Id.* Her bankruptcy schedule claimed an exemption for the damages she expected to win in her employment discrimination case. *Id.* The bankruptcy schedule listed the value of the claimed exemption as "unknown." *Id.* When the creditors' meeting was held, the bankruptcy trustee, Robert Taylor, was informed that Davis might win $90,000 in the suit. *Id.* He was later told that Davis's counsel was optimistic that a $110,000 settlement could be secured. *Id.*

Believing that Davis's discrimination lawsuit would not yield a payout, the trustee did not object to Davis's claimed exemption. *Id.* at 641. But Davis won her appeal and TWA settled with her for $110,000. *Id.* Once the trustee learned of the settlement, he filed a complaint in the bankruptcy court and claimed that the settlement proceeds were property of the estate. *Id.* The parties "agree[d] that Davis did not have a right to exempt more than a small portion of these proceeds," even though she had "claimed the full amount as exempt." *Id.* at 642. The Supreme Court was thus faced with the issue of "whether the trustee may contest the validity of an exemption after the 30-day period if the debtor had no colorable basis for claiming the exemption." *Id.* at 639.

The *Taylor* Court held that the trustee's failure to object to the claimed exemption within the 30-day timeframe prevented the trustee from challenging the validity of the exemption. *Id.* at 642. Because Davis had claimed the lawsuit

11

proceeds as exempt on her schedule, section 522(l) "made the property exempt" once the 30-day window had passed without an objection. *Id.* at 643. As a result, the trustee could not later "contest the exemption[,] . . . whether or not Davis had a colorable statutory basis for claiming it." *Id.* at 643-44.

*Taylor* recognized that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.* at 644. If the trustee "did not know the value of the potential proceeds of the lawsuit," he could have sought a hearing or asked the bankruptcy court for an extension of the objection period. *Id.* But having failed to do either, the trustee could not deprive the debtor of the exemption. *Id.* Thus, under *Taylor*, "[i]f an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." *Schwab*, 560 U.S. at 775-76 (citing *Taylor*, 503 U.S. at 642-43). The Court in *Taylor* acknowledged that this could lead debtors to claim improper exemptions but reasoned that existing protections against fraudulent claims provided some safeguards against this. *Taylor*, 503 U.S. at 644. And, "[t]o the extent that they do not, Congress may enact" further rules to prevent it. *Id.*

In *Schwab*, the debtor, Nadejda Reilly, filed for Chapter 7 bankruptcy after her catering business failed. *Schwab*, 560 U.S. at 774. On her bankruptcy schedules, Reilly listed cooking and kitchen equipment, to which she assigned an "estimated market value" of $10,718. *Id.* at 775. Reilly claimed two exempt interests in this equipment: a "tools of the trade" exemption of $1,850, 11 U.S.C. §522(d)(6), and a federal miscellaneous "wildcard" exemption of $8,868, 11

12

U.S.C. §522(d)(5). *Schwab,* 560 U.S. at 775. Combined, these two exemptions equaled the total "market value" Reilly listed for the equipment: $10,718. *Id.* No creditor objected to these claimed exemptions because the dollar value that Reilly assigned to each exemption fell within the monetary limits that the Code provided. *Id.* at 776.

An appraisal later valued the equipment at approximately $17,200. *Id.* The bankruptcy trustee, William Schwab, then moved to auction the equipment, award Reilly the $10,718 she claimed as exempt, and distribute the equipment's remaining surplus value to the creditors. *Id.* Opposing the auction, Reilly argued that "by equating on Schedule C the total value of the exemptions she claimed in the equipment with the equipment's estimated market value," Reilly "had put Schwab and her creditors on notice that she intended to exempt the equipment's full value, even if that amount turned out to be more than the dollar amount she declared, and more than the Code allowed." *Id.* Relying on *Taylor,* Reilly asserted that the trustee's failure timely to object to her claimed exemption meant that she could receive the excess value from the equipment's sale. *Id.*

The Supreme Court considered whether the trustee was required to object when the debtor in her schedule of exempt property declared the value of the assets "to be an amount within the limits that the Code prescribes." *Id.* at 774. The Court held that the trustee in these circumstances was not required to object within the 30-day window. *Id.* at 794-95. As the Bankruptcy Code typically allows a debtor to exempt only a monetary interest "in the assets described in the category, *not* as the assets themselves," *id.* at 782 (citing 11 U.S.C. §522(d)),

13

the trustee was not required to object to property claimed as exempt when the stated value of the interest "was within the limits the Code allows." *Id.*

Significantly for purposes of resolution of this dispute, the Supreme Court stated specifically "[w]here a debtor intends to exempt nothing more than an interest worth a specified dollar amount **in an asset that is not subject to an unlimited or in-kind exemption under the Code,** our approach will ensure clear and efficient resolution of complete competing claims to the asset's value." *Id.* at 792 (emphasis added).

The Florida homestead exemption, whether constitutional or statutory, is an asset that is subject to an unlimited exemption; there is no dollar limit. The Debtors' failure to check the "100% of FMV" box as the value of their exemption for the Homestead on their Schedule C and instead listing a dollar amount is of no moment, because under Florida law, the homestead exemption choice is all or nothing. Moreover, there is no question that the Debtors intended to exempt the entire value of their Homestead.

While there is also no question that under the Bankruptcy Code, the Debtors' otherwise unlimited homestead exemption was, in fact, subject to a dollar cap, there is no dispute that the Trustee knew, after discovery and prior to expiration of the exemption objection deadline, that the Homestead had been acquired by the Debtors within 1,215 days of the Petition Date. This knowledge, in turn, required the Trustee to take further action, if necessary, which could have been as simple as objecting to the homestead exemption to the extent the value of the Debtors' equity in the Homestead exceeded the $189,000 cap.

The *Schwab* case is very clear; its holding applies only to "an asset that is not subject to an unlimited or in-kind exemption under the Code" and only to an asset "the value of which may not exceed a certain dollar amount, in a particular type of asset". Schedule C Form B106C was specifically changed after *Schwab* to give debtors the option to select between a specific dollar amount or 100% of fair market value. Fed. R. Bankr. P. OFFICIAL Form B106C, Advisory Committee Notes. The 100% fair market value choice "would impose no dollar limit where the exemption is unlimited in dollar amount." *Id.* However, nothing in the change in the form alters the fact that the Florida law homestead exemption is in fact unlimited in dollar amount. This situation is no different than if the Debtors had in fact checked the 100% fair market value choice without putting a dollar limit and then had indicated on Schedule C, section 3, that the value of the Debtors' interest in the Homestead did not exceed $189,000. In this case, the Trustee had actual knowledge of the information that gave the Trustee the right to object to any claim of homestead in excess of $189,000. However, like the trustee in *Taylor*, the Trustee failed to timely act on information that she had.

Because the Trustee failed to object to the Debtors' claimed homestead exemption before expiration of the agreed-to deadline, the Trustee waived the right to object under 522(p)(1). Consequently, the Debtors' homestead exemption is allowed "whether or not [the Debtors] had a colorable statutory basis for claiming it", even if the value of the equity above the first mortgage exceeds the statutory limit of $189,000.

### III. CONCLUSION

15

Deadlines are deadlines, and the Bankruptcy Code says what the Bankruptcy Code says. While it is possible that the way in which the Debtors scheduled the Homestead was an attempt to disguise the timing of the purchase of the Homestead, the Trustee knew well before the objection to exemption deadline that there was a potential section 522(p)(1) objection and yet did not act. The Trustee's reliance on *Schwab* is not well founded, because *Schwab* made clear that its holding does not apply to assets that are subject to an unlimited exemption.[5]

Accordingly, it is

**ORDERED** and **ADJUDGED** that the *Trustee's Motion to Compel Access to the Debtors' Property at 8064 NW 46th Terr., Miami, Florida 33166* (ECF #45) and *Trustee's Application to Employ Jason A. Welt and Trustee Realty Inc. as Real Estate Broker for the Trustee* (ECF #43) are **DENIED** with prejudice.

# # #

**Copies to:**
David Blansky, Esq.
Carlos E. Sardi, Esq.

*Attorney Sardi is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*

---

[5] The Court does not need to decide how this holding might be different if the Trustee had not known prior to the deadline to object to exemptions that the Debtors purchased the Homestead within the 1,215 days.